EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| Michael L. Ruiz Matos<br><br>Peticionario<br><br>v.<br><br>Departamento de Corrección y Rehabilitación<br><br>Recurrido | 2023 TSPR 144<br><br>213 DPR ___ |

Número del Caso:  MC-2023-0083


Fecha:  19 de diciembre de 2023


Tribunal de Apelaciones:

     Panel I


Abogado de la parte peticionaria:

     Por derecho propio


Materia:  Resolución de Sala Especial de Despacho con Voto Particular Disidente.

Este documento está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal Supremo. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

INTEGRACIÓN DE SALA ESPECIAL

ORDEN

En San Juan, Puerto Rico, a 1 de diciembre de 2023.

Por estar igualmente divididos los votos de los miembros de esta sala, se constituye una Sala Especial de Despacho integrada por la Jueza Presidenta Oronoz Rodríguez, la Jueza Asociada señora Pabón Charneco, el Juez Asociado señor Kolthoff Caraballo, el Juez Asociado señor Rivera García y el Juez Asociado señor Estrella Martínez, para atender el caso MC-2023-0083, Michael L. Ruiz Matos v. Departamento de Corrección y Rehabilitación.

Lo decretó y firma,

Maite D. Oronoz Rodríguez
Jueza Presidenta

CERTIFICO:

Bettina Zeno González
Secretaria del Tribunal Supremo Interina

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

|  |  |  |
|---|---|---|
| Michael L. Ruiz Matos<br><br>Peticionario<br><br>v.<br><br>Departamento de Corrección y Rehabilitación<br><br>Recurrido | MC-2023-0083 |  |

Sala Especial de Despacho integrada por la Jueza Presidenta Oronoz Rodríguez, la Jueza Asociada señora Pabón Charneco, el Juez Asociado señor Kolthoff Caraballo, el Juez Asociado señor Rivera García y el Juez Asociado señor Estrella Martínez

RESOLUCIÓN

En San Juan, Puerto Rico, a 19 de diciembre de 2023.

Atendido el escrito intitulado *Reconsideración* que presentó el Sr. Michael L. Ruiz Matos, se acoge como *certiorari* y se provee no ha lugar.

Lo acordó el Tribunal y certifica el Secretario del Tribunal Supremo. El Juez Asociado señor Estrella Martínez emitió un Voto Particular Disidente al cual se unió la Jueza Presidenta Oronoz Rodríguez.

Javier O. Sepúlveda Rodríguez
Secretario del Tribunal Supremo

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

|  |  |  |
|---|---|---|
| Michael L. Ruiz Matos<br><br>Peticionario<br><br>v.<br><br>Departamento de Corrección y Rehabilitación<br><br>Recurrido | MC-2023-0083 | |

Voto particular disidente emitido por el Juez Asociado Señor ESTRELLA MARTÍNEZ, al cual se une la Jueza Presidenta ORONOZ RODRÍGUEZ.

En San Juan, Puerto Rico, a 19 de diciembre de 2023.

En esta ocasión, me veo obligado a hacer constar mi oposición a la validación sub silentio de una práctica por parte del Departamento de Corrección y Rehabilitación (Corrección) que, más allá de irrazonable, está en conflicto directo con el Derecho imperante en nuestra jurisdicción.

Y es que, a pesar de que con la aprobación de la Ley Núm. 85-2022, infra, se instituyó un estatuto con efecto retroactivo favorable para la persona confinada en el conteo de sus años para poder beneficiarse del programa de libertad bajo palabra, Corrección insiste en establecer un cómputo para ello que es contrario a la ley antes citada por ser en extremo oneroso para aquellos reclusos con sentencias consecutivas. Según se explicará en detalle más adelante,

Corrección ha decidido que el mandato expreso de tomar el mínimo de cumplimiento de la sentencia más longeva como el punto de partida para cualificar para tal privilegio requiere descontar las sentencias ya extinguidas y comenzar el conteo de años desde entonces.

Por entender que Corrección erró crasamente al instaurar un sistema de cómputos tan engorroso que interfiere con el que la comunidad encarcelada pueda gozar del privilegio de cumplir la última parte de su condena en libertad bajo palabra, al punto que prácticamente nulifica el efecto de la Ley Núm. 85-2022, infra, la cual fue creada específicamente para alivianar la carga de años requerida para cualificar para este, disiento.

A continuación, procedo a explicar los fundamentos de mi postura, no sin antes repasar el tracto fáctico que enmarca esta controversia.

**I**

El Sr. Michael L. Ruiz Matos (señor Ruiz Matos) se encuentra confinado en el Centro de Detención del Oeste ubicado en Mayagüez. Este actualmente cumple una pena de veinte (20) años de reclusión que fue impuesta consecutivamente, a saber: catorce (14) años por agresión grave; cinco (5) años por portación y uso de armas de fuego sin licencia, y un (1) año por disparar o apuntar un arma

de fuego ilegalmente.[1] El señor Ruiz Matos ingresó al sistema correccional el 20 de septiembre de 2017.

En lo pertinente, según la Hoja de control sobre liquidación de sentencias emitida por Corrección el 31 de octubre de 2022, el señor Ruiz Matos cumpliría el mínimo de su sentencia más larga, la de catorce (14) años, el 5 de noviembre de 2027, tras determinar que esta comenzó a cumplirse el 17 de octubre de 2019, cuando cumplió el mínimo de sus otras dos (2) sentencias.[2] A raíz de tal documento, el señor Ruiz Matos presentó una Solicitud de remedio administrativo mediante la cual peticionó que le fuera aplicado el beneficio provisto por la Ley Núm. 85-2022, infra, de modo que el mínimo de su sentencia mayor se diera por cumplido el 5 de noviembre de 2024.

Por su parte, Corrección envió una Respuesta con fecha de 4 de mayo de 2023 en la que sostuvo que aplicó la Ley Núm. 85-2022, infra. En lo pertinente, le indicó que: "Al momento de la aplicación a usted le restaba por cumplir la Sentencia por el Art. 109 con pena de 14 años, el EMPIEZA

---

[1] Art. 109 de la Ley Núm. 146-2012, Código Penal de Puerto Rico, 33 LPRA sec. 5162; Art. 5.04 de la Ley Núm. 404-2000, Ley de Armas de Puerto Rico, 25 LPRA ante sec. 458c (derogada), y Art. 5.15 de la Ley Núm. 404-2000, Ley de Armas de Puerto Rico, 25 LPRA ante sec. 458n (derogada).

[2] Recurso del señor Ruiz Matos, Anejo A, pág. 9.

A CUMPLIR (EAC) tanto en el máximo, como en el mínimo son las fechas en que cumplió las Sentencias anteriores".[3]

Inconforme, el señor Ruiz Matos instó una Solicitud de reconsideración. En esta arguyó que la interpretación que Corrección le dio a la Ley Núm. 85-2022, infra, le impone la carga onerosa de tener que cumplir todas las sentencias de menor cantidad de años antes de comenzar a cumplir el mínimo de la sentencia mayor, desafiando así su propósito de reducir la cantidad de tiempo para cualificar para el programa de libertad bajo palabra. Insistió en que, a pesar de que fue sentenciado por tres (3) delitos, la sentencia de reclusión es una sola y, debido a la cantidad de años que ha pasado encarcelado, la fecha del mínimo debería ser el 5 de noviembre de 2024. Corrección la denegó.

En desacuerdo, el señor Ruiz Matos acudió ante el Tribunal de Apelaciones por derecho propio mediante un Escrito de revisión judicial. En este, argumentó que, al considerar como punto de partida para cumplir la sentencia mayor la extinción de sus otras penas y no su ingreso a prisión, Corrección estaba obligándolo a pasar más tiempo encarcelado para cualificar para el programa de libertad bajo palabra. Indicó que la ley aplicable no instruye que

---

[3]Íd., pág. 12. Corrección acompañó su réplica con una nueva Hoja de control sobre liquidación de sentencias, también con fecha de 4 de mayo de 2023, en la que fueron eliminadas las sentencias más cortas y se modificó la fecha del mínimo en la más larga al 5 de octubre de 2027 por la acreditación de bonificaciones. Íd., pág. 13.

primero tiene que extinguirse la pena más corta, por lo que fue irrazonable no ajustar su fecha de cumplimiento mínimo a la luz del momento en el que comenzó a servir la totalidad de su sentencia.

Por su parte, Corrección, por conducto de la Oficina del Procurador General, presentó un Escrito en cumplimiento de resolución en el cual enfatizó que la revisión judicial debe estar dirigida a acertar, no si la determinación administrativa es la más correcta, sino meramente si esta es razonable. Sostuvo que la interpretación a los fines de que la extinción de las sentencias menores debe eliminarse del cómputo de años para cualificar para la libertad bajo palabra merece deferencia por parte de los foros judiciales, pues es el producto de una aplicación general y uniforme de la norma vigente.

El 21 de junio de 2023, el Tribunal de Apelaciones emitió una Sentencia mediante la cual confirmó el dictamen de Corrección tras determinar que no se había demostrado que la agencia hubiera actuado irrazonablemente o que hubiera errado en su interpretación de la Ley Núm. 85-2022, infra. Razonó que Corrección tiene documentación interna, entre estos el Manual de procedimientos de la División de Documentos y Récord Penales de Corrección, infra, en la que establece un orden específico en el cual se cumplirán las sentencias consecutivas y que es razonable que el legislador conociera de tal orden al aprobar el estatuto antes citado.

Por ende, concluyó que no estaba en posición de determinar que el proceder de la agencia fuera errado.

Todavía disconforme, el señor Ruiz Matos instó una solicitud de reconsideración ante el foro apelativo intermedio. En esencia, reiteró que la interpretación conferida a la Ley Núm. 85-2022, supra, por parte de Corrección era un ejercicio irrazonable de su discreción administrativa, pues fue precisamente la intención legislativa el acortar la cantidad de años que debía esperar una persona confinada por varios delitos para ser considerado para la libertad bajo palabra a base de la sentencia más larga. El Tribunal de Apelaciones la declaró no ha lugar.

Aún desfavorecido, el señor Ruiz Matos acudió ante este Tribunal. En su recurso, este reitera que la determinación de Corrección tiene el efecto de obviar la retroactividad de la Ley Núm. 85-2022, infra. A su vez, señala que la agencia recurrida insiste erróneamente en remover las sentencias extintas de la Hoja de control sobre liquidación de sentencias, las cuales fueron producto de un mismo hecho, pretendiendo utilizarlas como punto de inicio para el mínimo de la más larga que falta por cumplir. Sostiene que es irrazonable que no se considere el tiempo desde su ingreso a la institución para fines de tabular los años restantes para cualificar para evaluación ante la Junta de Libertad Bajo Palabra.

Toda vez que una mayoría de una Sala Especial denegó el recurso, con el efecto de que este Tribunal no pueda adentrarse en esta controversia y pautar un Derecho contundente que sirviera de guía para la evaluación justa bajo este estatuto de los derechos de los confinados como el señor Ruiz Matos, procedo a sentar las bases jurídicas que fundamentan mi objeción a la conducta de Corrección en este asunto.

## II

### A.

La revisión judicial permite a los tribunales garantizar que las agencias administrativas actúen dentro de los márgenes de las facultades que le fueron delegadas por ley. Comisión Ciudadanos v. G.P. Real Prop., 173 DPR 998, 1015 (2008). A su vez, posibilita el poder constatar que los organismos administrativos "cumplan con los mandatos constitucionales que rigen el ejercicio de su función, especialmente con los requisitos del debido proceso de ley". Íd. De esta forma, se vela que los ciudadanos tengan "un foro al cual recurrir para vindicar sus derechos y obtener un remedio frente a las actuaciones arbitrarias de las agencias". Íd. En términos simples, la revisión judicial constituye "el recurso exclusivo para revisar los méritos de una decisión administrativa sea ésta de naturaleza adjudicativa o de naturaleza informal".

<u>Depto. Educ. v. Sindicato Puertorriqueño</u>, 168 DPR 527, 543 (2006).

No obstante, al ejercer la revisión judicial, los tribunales no pueden descartar de forma absoluta la determinación de una agencia, sino que primero tienen que examinar la totalidad del expediente y determinar si la interpretación de la agencia constituyó un ejercicio razonable de su discreción administrativa, así fundamentado en la pericia particular de esta, en consideraciones de política pública o en la apreciación de la prueba. <u>Otero v. Toyota</u>, 163 DPR 716, 729 (2005). Dicho de otro modo, solo procede sustituir el criterio de la agencia por el del tribunal revisor cuando no exista una base racional para explicar la decisión administrativa. <u>Capó Cruz v. Junta de Planificación</u>, 204 DPR 581, 591 (2020).

Ahora bien, aunque los tribunales revisores están llamados a conceder deferencia amplia a las determinaciones de las agencias administrativas, tal norma no es absoluta. En otras palabras, no puede imprimírsele un sello de corrección automático bajo el pretexto de deferencia a aquellas determinaciones o interpretaciones administrativas que son irrazonables, ilegales o contrarias a derecho. <u>Graciani Rodríguez v. Garage Isla Verde, LLC</u>, 202 DPR 117, 126 (2019). En consecuencia, la deferencia cede cuando: (1) la decisión no está basada en evidencia sustancial; (2) el organismo administrativo ha errado en la aplicación o

interpretación de las leyes o reglamento;(3) ha mediado una actuación arbitraria, irrazonable o ilegal, o (4) la actuación administrativa lesiona derechos constitucionales fundamentales. Super Asphalt Pavement, Corp. v. Autoridad para el Financiamiento de la Infraestructura de Puerto Rico, 206 DPR 803, 819 (2021).

**B.**

Como se sabe, la Junta de Libertad Bajo Palabra (Junta) fue creada a través de la Ley Núm. 118 de 22 de julio de 1974, según enmendada, conocida como la Ley de la Junta de Libertad Bajo Palabra, 4 LPRA sec. 1501 et seq. (Ley Núm. 118-1974), con el fin de facultar a tal entidad con la autoridad para "decretar la libertad bajo palabra de cualquier persona recluida en cualquiera de las instituciones penales de Puerto Rico". Art. 3, 4 LPRA sec. 1503. En términos más simples, la Junta tiene el poder de conceder a cualquier persona recluida en una institución correccional del país el privilegio de cumplir la última parte de su condena en la condición de libertad bajo palabra. Benítez Nieves v. ELA et al., 202 DPR 818 (2019). Al respecto, los beneficios de una sentencia suspendida o la libertad bajo palabra no constituyen un derecho que pueda reclamarse, sino que se trata de un privilegio legislativo cuya concesión y administración recae, respectivamente, sobre el Tribunal o la Junta. Pueblo v. Negrón Caldero, 157 DPR 413, 420 (2002). Tales privilegios son, en realidad,

medidas penológicas que disfrutan las personas convictas como parte de su tratamiento de rehabilitación y, técnicamente, se consideran parte de la reclusión. Íd.

En lo pertinente a estos hechos, hasta octubre de 2022, el Art. 308 de la Ley Núm. 146 de 30 de Julio de 2012, según enmendada, conocida como el <u>Código Penal de Puerto Rico de 2012</u> (Código Penal de 2012), establecía lo siguiente:

> Toda persona convicta bajo las disposiciones de este Código podrá ser considerada para libertad bajo palabra por la Junta de Libertad bajo Palabra al cumplir el setenta y cinco por ciento (75%) del término de reclusión impuesto.
>
> En delitos graves cuyo término de reclusión señalada en el tipo sea de cincuenta (50) años, la persona podrá ser considerada para libertad bajo palabra por la Junta de Libertad bajo Palabra al cumplir veinte (20) años de su sentencia o diez (10) años si se trata de un menor de edad procesado y sentenciado como adulto.
>
> En caso de la persona convicta de asesinato en primer grado, un delito cuya pena sea de noventa y nueve (99) años o reincidencia habitual la persona podrá ser considerada para libertad bajo palabra por la Junta de Libertad bajo Palabra, al cumplir treinta y cinco (35) años naturales de su sentencia, o quince (15) años naturales, si se trata de un menor de edad procesado y sentenciado como adulto. Las personas convictas al amparo del inciso (c) del Artículo 93 estarán excluidas del privilegio de Libertad bajo Palabra.
>
> En los casos en que se imponga a un menor de edad procesado y sentenciado como adulto, una sentencia por más de un delito a ser cumplida de manera consecutiva, el término para cualificar será calculado tomando solamente como base la pena del delito mayor. En caso de que la pena más alta a cumplirse sea idéntica para dos (2) o más delitos, se utilizará el término de uno (1) solo de ellos, independientemente si la ley en virtud de la cual resulta convicto sea una ley especial.

Se desprende a simple vista que, como norma general, era requerido el cumplimiento de un setenta y cinco por ciento (75%) del término total de reclusión para cualificar para el programa de libertad bajo palabra, siendo las únicas especificaciones en la disposición aquellas dirigidas a casos relacionados con asesinatos, menores procesados como adultos o delitos con penas mayores de cincuenta (50) años. Es decir, no existía consideración particular para casos como el del señor Ruiz Matos, un adulto a quien le fueron impuestas penas consecutivas menores de cincuenta (50) años y quien, de hecho, hubiera estado privado de participar de este privilegio por sus convicciones bajo la Ley de Armas, supra.

Ello cambió significativamente con la creación y puesta en vigor de la Ley Núm. 85-2022, intitulada "Para enmendar el Artículo 308 de la Ley Núm. 146-2012 de 2012, según enmendada, conocida como "Código Penal de Puerto Rico", con el fin de establecer los términos para cualificar para la consideración de la Junta de Libertad Bajo Palabra; enmendar el Artículo 3 de la Ley Núm. 118 de 22 de julio de 1974, según enmendada, conocida como "Ley de la Junta de Libertad Bajo Palabra", a los fines de atemperar su contenido con las disposiciones de este estatuto y lo dispuesto en la Ley 168-2019, conocida como "Ley de Armas de Puerto Rico de 2020"; disponer sobre la retroactividad

de la aplicación de esta Ley; y para otros fines relacionados".

Según su Exposición de motivos, la Ley Núm. 85-2022, supra, fue promulgada con el fin específico de cumplir con la política pública constitucional de rehabilitación. En servicio de tal principio, la ley antes citada creó un "andamiaje penal más humano en la implementación de las penas", pero "sin obviar la responsabilidad de la persona ante el gobierno por sus acciones delictivas". En lo que atañe a este caso, tal estatuto tiene como misión "establecer una manera justa, retributiva y rehabilitadora, que le permita a aquella persona convicta por varios delitos el poder ser considerada para libertad bajo palabra al cumplir con los términos de la sentencia más onerosa relacionada directamente con alguno de los delitos por los cuales fue encontrado culpable".

A la luz de esta enmienda, el Art. 308 del Código Penal de 2012, 33 LPRA sec. 5416, ahora lee como sigue:

> Toda persona convicta bajo las disposiciones de este Código podrá ser considerada para libertad bajo palabra por la Junta de Libertad Bajo Palabra al cumplir el setenta y cinco por ciento (75%) del término de reclusión impuesto. Este cómputo nunca excederá de quince (15) años cuando se trate de un adulto o de cinco (5) años cuando se trate de un menor sentenciado y procesado como adulto en delitos para los cuales al realizarse el cómputo jurisdiccional para cualificar ante la consideración de la Junta de Libertad Bajo Palabra este sea mayor a lo requerido para delitos con pena fija señalada en el tipo de cincuenta (50) años.

En delitos graves cuyo término de reclusión señalada en el tipo sea de cincuenta (50) años, la persona podrá ser considerada para libertad bajo palabra por la Junta de Libertad Bajo Palabra al cumplir quince (15) años de su sentencia o cinco (5) años si se trata de un menor de edad procesado y sentenciado como adulto.

En caso de la persona convicta de asesinato en primer grado, un delito cuya pena sea de noventa y nueve (99) años o reincidencia habitual la persona podrá ser considerada para libertad bajo palabra por la Junta de Libertad Bajo Palabra, al cumplir veinticinco (25) años de su sentencia, o diez (10) años, si se trata de un menor de edad procesado y sentenciado como adulto. Las personas convictas al amparo del inciso (c) del Artículo 93 estarán excluidas del privilegio de libertad bajo palabra.

**En aquellos procesos judiciales en que se encuentre al acusado culpable por más de un delito y se le imponga una sentencia a ser cumplida de manera consecutiva, <u>la persona convicta tendrá derecho a cualificar para libertad bajo palabra al cumplir con el término concerniente a la pena mayor recibida por alguno de los delitos cometidos</u>.** Cuando más de uno de los delitos cometidos conlleve la misma pena, la persona convicta cualificará para el beneficio de libertad bajo palabra con el mero hecho de haber cumplido con el término de una de ellas. Lo dispuesto en este párrafo será de aplicabilidad, independientemente si la Ley en virtud de la cual resulta convicto, sea una Ley Penal Especial. (Negrillas y énfasis suplido).

Asimismo, la Ley Núm. 85-2022, <u>supra</u>, tuvo el efecto de enmendar el acápite (6) del inciso (a) del Art. 3 de la Ley Núm. 118-1974, 4 LPRA sec. 1503, para establecer, en lo que nos concierne, que:

En aquellos procesos judiciales en que se encuentre al acusado culpable por más de un delito y se le imponga una sentencia a ser cumplida de manera consecutiva, la persona convicta tendrá derecho a cualificar para libertad bajo palabra al cumplir con el término concerniente a la pena mayor recibida por alguno de los delitos

cometidos. Cuando más de uno de los delitos cometidos conlleve la misma pena, la persona convicta cualificará para el beneficio de libertad bajo palabra con el mero hecho de haber cumplido con el término de una de ellas. Lo dispuesto en este párrafo será de aplicabilidad, independientemente si la Ley en virtud de la cual resulta convicto, sea una Ley Penal Especial.

Finalmente, en su Sección 3, la Ley Núm. 85-2022, supra, indica que su aplicación es "**retroactiva, independientemente del Código Penal o Ley Penal Especial vigente al momento de los hechos delictivos, siempre y cuando resulte favorable para la persona condenada**". (Énfasis suplido). Además, conforme con su Sección 4, sus disposiciones "prevalecerán sobre cualquier otra disposición de ley que no estuviere en armonía con lo aquí establecido".

Como consecuencia de la instauración de este nuevo andamiaje de liquidación de sentencias para propósitos del programa de libertad bajo palabra, el 15 de junio de 2023, Corrección promulgó la Carta Circular Núm. 2023-02 en la que identificó el asunto como "Procedimiento a seguir para el cumplimiento de la Ley Núm. 85 de 2022". Mediante esta, Corrección implantó el sistema de evaluación que se transcribe a continuación:

Según dispone la mencionada Ley Núm. 85 y los numerosos adiestramientos impartidos, los empleados pertenecientes a la Sección de Récord deben estar llevando a cabo el siguiente procedimiento:

1. Verificarán todos los expedientes criminales de toda la población correccional.

2. Evaluarán el documento titulado "Hoja de Control sobre Liquidación de Sentencias". De observar más de un término computado, identificarán la sentencia base mayor.

3. Tomarán en cuenta las sentencias de manera individual. Las sentencias que son consecutivas no deberán estar consolidadas en la nueva revisión. De estar consolidadas, el resultado conllevaría a identificar una pena mayor que no necesariamente sea la correcta para el cómputo final a los fines requeridos por la ley.

4. Los nuevos cómputos se harán en una nueva "Hoja de Control sobre Liquidación de Sentencia", la cual se identificará como una "Reliquidación".

5. En virtud de lo anterior, en la nueva "Hoja de Control sobre Liquidación de Sentencia", identificarán la pena mayor y se observará el mínimo de esa sentencia. En el caso de que el mínimo sea mayor de 15 años, se atemperará a 15 años, salvo en los casos sentenciados por asesinato en primer grado, que el mínimo será de 25 años naturales.

6. Computarán en primer orden la pena mayor con el mínimo. Cuando el mínimo de la pena mayor sea menor de 15 años, no se efectuará cómputo adicional. Solo se pondrá en primer orden.

7. Todo delito cumplido en su totalidad (máximo y mínimo) será eliminado de la Hoja de Liquidación de Sentencia.

8. Adjudicarán las bonificaciones adicionales al nuevo cómputo en el máximo y en el mínimo, exceptuando los casos de asesinato en primer grado, que solo bonifican en el máximo.

9. Si el delito de la pena mayor (primer orden) excluye las bonificaciones adicionales, no podrán ser acreditadas, aunque el confinado tenga tiempo adjudicado por concepto de trabajo y/o estudios.

10. Computarán los demás términos de las sentencias consecutivas en el mismo orden de la hoja de liquidación anterior y no se computarán mínimos adicionales.

11. Se considerará y documentará solamente un mínimo, el cual responderá a la pena mayor.

12. Evidenciarán, además, en la nueva "Hoja de Control sobre Liquidación de Sentencias" lo siguiente:
    • Casos pendientes
    • Detainer
    • Warrant

- Pena Especial

13. Se identificará en el registro de control (libro del área socio penal) cada uno de los casos reliquidados. Además, se indicará la fecha del cumplimiento del mínimo, con el fin de tener de manera accesible la información.

14. Se documentará en el expediente criminal todo el proceso aquí expresado, realizando las anotaciones correspondientes del ejercicio reliquidado en el orden de los delitos que se adjudicaron, o que ya contenía sus mínimos cumplidos con anterioridad.

15. Una vez el empleado de la Sección de Récord culmine el proceso descrito, referirá la nueva "Hoja de Control sobre Liquidación de Sentencias" a la Unidad de Servicios Sociopenales, para las acciones y los referidos correspondientes, según nuestras leyes y reglamentos.

16. Todos los confinados serán orientados sobre este procedimiento.

El 11 de octubre de 2023, la Carta Circular Núm. 2023-2 fue enmendada, quedando las instrucciones modificadas de la manera siguiente:

[…]

5. Si la pena mayor resultara ser de un hecho ocurrido estando en una alternativa de reclusión, el término en el que comenzará a cumplir el mínimo de esa pena mayor se computará a partir del cumplimiento del remanente de la pena revocada.

6. En virtud de lo anterior, en la nueva "Hoja de Control sobre Liquidación de Sentencia", identificarán la pena mayor, y se observará el mínimo de esa sentencia. En el caso de que el mínimo sea mayor de 15 años, se atemperará a 15 años, salvo en los casos sentenciados por asesinato en primer grado, que al mínimo será de 25 años naturales, en adultos y 10 años naturales en menores juzgados como adultos.

7. Computarán en primer orden la pena mayor con el mínimo. Cuando el mínimo de la pena mayor sea menor de 15 años, no se efectuará cómputo adicional. Solo se pondrá en primer orden.

8. […]

9. […]

10. […]

11. […]
12. Los delitos cumplidos en su totalidad permanecerán en la nueva "Hoja de Control sobre Liquidación de Sentencias". Por ejemplo, en los casos de asesinato en primer grado cometidos con armas, se computará en primer orden el asesinato en primer grado con el mínimo establecido, beneficiándolo del tiempo en reclusión preventiva. Luego se incluirán y computarán los demás delitos en la sentencia, incluyendo los de armas.
[…]

Incorporado a esta ponencia el Derecho aplicable a la controversia, procedo a exponer cómo este guía mi postura.

**III**

Conforme se indicó, el señor Ruiz Matos sostiene que el espíritu de las enmiendas introducidas al Art. 308 del Código Penal de 2012, _supra_, mediante la Ley Núm. 85-2022, _supra_, con respecto a los procedimientos de libertad bajo palabra para confinados con sentencias consecutivas exige que se tome en consideración la totalidad de años de reclusión para establecer el mínimo de la sentencia más larga, no que su cómputo comience al extinguirse las más cortas o que estas sean excluidas en su totalidad de la Hoja de control sobre liquidación de sentencias.

En su caso en particular, al señor Ruiz Matos le fueron impuestas tres (3) sentencias consecutivas que suman un total de veinte (20) años. Tras ser ingresado a la institución penal el 20 de septiembre de 2017, este extinguió las dos (2) sentencias relacionadas con la antigua Ley de Armas, _supra_, las cuales sumaban conjuntamente seis (6) años.

Ahora bien, el 31 de octubre de 2022, ya entrada en vigor la Ley Núm. 85-2022, supra, con su efecto retroactivo independientemente del Código Penal o de la Ley Penal Especial vigente a la fecha de los hechos delictivos, Corrección emitió una Hoja de control sobre liquidación de sentencias para el señor Ruiz Matos. Mediante esta, la agencia recurrida determinó que los años de reclusión durante los cuales extinguió sus primeras dos (2) sentencias debían ser excluidos del cómputo y que el mínimo de la sentencia de catorce (14) años de reclusión, la mayor de todas las que le fueron impuestas, comenzó a transcurrir entonces. De esta forma, concluyó que la fecha del mínimo de cumplimiento de tal pena sería el 5 de noviembre de 2027. Posteriormente, el 4 de mayo de 2023, se reiteró en su postura y eliminó de la Hoja las sentencias ya extinguidas.

En su comparecencia ante el Tribunal de Apelaciones, Corrección no abundó sobre los fundamentos que sustentan sus actos, como tampoco sobre el razonamiento en el que se ancló este ejercicio. Meramente se limitó a argumentar sobre el estándar de razonabilidad bajo el cual debían examinarse sus acciones y a insistir en que no existe prueba de que su interpretación y aplicación de la Ley Núm. 85-2022, supra, fuera contraria a Derecho o completamente errónea. El foro apelativo intermedio avaló tal postura. **A mi juicio, no les asiste la razón, pues el texto del estatuto y su historial legislativo demuestran la inexactitud de su interpretación**

**y la contrariedad de tal aplicación con su propósito. Me explico.**

En primer lugar, una lectura del texto estatutario antes citado revela con claridad que este no contiene expresión o instrucción alguna con respecto al orden en que deben contarse las sentencias impuestas consecutivamente o, incluso, si debe diferenciarse entre estas para propósitos del conteo de años con el fin de cualificar para el privilegio de libertad bajo palabra. Es decir, de las enmiendas introducidas a través de la Ley Núm. 85-2022, supra, no emana indicio alguno de que, al calcular el mínimo de la sentencia más larga para propósitos de poder beneficiarse del programa de libertad bajo palabra, sea necesario descartar de la suma las sentencias de menor extensión ya extinguidas o usar tal evento como punto de partida para iniciar el conteo del mínimo de la sentencia más longeva.

Recuérdese, previo a la ley hoy examinada no existía consideración especial para personas confinadas extinguiendo penas de forma consecutiva, pues previo a que entrara en vigor la Ley Núm. 85-2022, supra, aquellos que cualificaban para el privilegio de libertad bajo palabra primero debían extinguir el setenta y cinco por ciento (75%) de la totalidad de su pena. Sin embargo, bajo el nuevo esquema introducido por la Ley 85-2022, supra, solo se requiere cumplir con el setenta y cinco por ciento (75%) de

la pena más alta, que en el caso del señor Ruiz Matos es la pena de catorce (14) años. Con ello en mente, el señor Ruiz Matos tendría que cumplir con 10.5 años de reclusión —esto es, el setenta y cinco por ciento (75%) de su pena mayor— en vez de lo que sería el setenta y cinco por ciento (75%) de la totalidad de las penas impuestas para ser considerado para el privilegio de la libertad bajo palabra.

Sin embargo, Corrección excluyó el tiempo ya acumulado al determinar que ello correspondió a la extinción de sus penas de cinco (5) y un (1) año bajo la antigua Ley de Armas, supra, y, en consecuencia, concluyó que el término en el que comenzó a extinguir la pena mayor tuvo su inicio en la fecha en la que alcanzó el mínimo por estos primeros dos (2) delitos: el 17 de octubre de 2019. En lo que constituye una violación clara al mandato expreso de aplicar la Ley Núm. 85-2022, supra, en beneficio del confinado, a la luz del cálculo de Corrección, en vez de solo cumplir el setenta y cinco por ciento (75%) de la pena más larga, el señor Ruiz Matos tendría que cumplir prácticamente el setenta y cinco por ciento (75%) de la totalidad de su pena según lo exigía el Art. 308 del Código Penal, supra, previo a la enmienda aquí en cuestión. Ello no solamente vulnera el propósito de la ley, sino que va en contra de la interpretación que se le ha conferido a la Ley Núm. 85-2022, supra, desde sus inicios.

De hecho, en esta coyuntura resulta de particular interés que, mientras la hoy Ley Núm. 85-2022, _supra_, era evaluada como el Proyecto del Senado 437, el Departamento de Justicia emitió un memorial el 30 de agosto de 2021 con su posición oficial al respecto. En lo pertinente, al oponerse a la enmienda dirigida a establecer como mínimo para la libertad bajo palabra el cumplimiento del setenta y cinco por ciento (75%) de la sentencia más larga cuando hubieran sido impuestas sentencias consecutivas, tal organismo arguyó lo siguiente:

> Ahora bien, no avalamos el lenguaje con respecto a que las personas que son convictas a cumplir sentencias consecutivas por varios delitos tengan que cumplir solamente con el término concerniente a la pena mayor recibida por alguno de estos delitos. Consideramos que esta propuesta derrota el propósito de la sanción de consecutividad de las penas, y además incide con los componentes de proporcionalidad, naturaleza de los hechos, sanción, retribución a las víctimas y a la sociedad, entre otros elementos importantes dentro de la compleja maquinaria del ordenamiento penal.
>
> En este punto, es necesario resaltar que el aspecto de la consecutividad de la pena es uno que está fundamentado en el interés del Estado de proteger el orden y la seguridad pública, y constituye una herramienta de prevención de la comisión de delitos, a base de la naturaleza de los hechos y en proporción al daño causado. Como bien reconoce la medida en su Exposición de Motivos, en nuestro sistema de Derecho Penal, "no existe la cadena perpetua sin posibilidad de libertad bajo palabra". Por tanto, la libertad bajo palabra es un privilegio disponible para los convictos que han cumplido con la sanción penal. Para ser beneficiario de dicho privilegio, el solicitante debe cumplir con su responsabilidad y con el término de tiempo establecido en la ley. El término fijo e independiente al cómputo de la liquidación mínima de la sentencia es uno que tiene que cumplirse en años naturales. Se ha

reconocido que el requerir el cumplimiento de un término fijo de la sentencia, sea consecutivo, es constitucionalmente válido, pues de no ser así se reconocería un beneficio adicional para los sentenciados a penas de noventa y nueve (99) años. Asimismo, consideramos que, de ser aprobada la pretendida enmienda, su aplicación dejaría sin efecto la consecuencia de la imposición [de] sentencias consecutivas.

[…]

De lo anterior podemos derivar que, de aprobarse las enmiendas propuestas al Artículo 308, resultaría inoficioso para un tribunal imponer sentencias a ser cumplidas de forma consecutiva, pues no se daría cumplimiento estricto al término de tiempo dispuesto para cada delito, a los efectos de considerar a un convicto para libertad bajo palabra.[4]

**Entiéndase, al leer el proyecto de ley que eventualmente se convirtió en la Ley Núm. 85-2022, _supra_, en particular, la sección relacionada con la forma de contabilizar el mínimo cumplido cuando hay sentencias que se cumplen de forma consecutiva, el Departamento de Justicia interpretó que la sentencia mayor cuenta desde el principio.** De ahí es que surge su preocupación con que ello pudiera tener el efecto de nulificar el propósito de imponer sentencias consecutivas con el fin de que la persona tuviera que cumplir términos de reclusión específicos por cada uno de los delitos cometidos. En palabras más simples, el entendido común, incluso por el Departamento de Justicia, durante esta fase del historial legislativo fue que el

---

[4]Véase, https://sutra.oslpr.org/osl/sutra/anejos/138953/justicia.pdf (última visita 4 de diciembre de 2023).

mínimo de la sentencia más larga comenzaba desde el inicio de la reclusión y no dependía de que se extinguieran las sentencias más cortas previo a ello.

Dicho sea de paso, tal oposición fue sumariamente descartada en cada uno de los tres (3) informes que fueron rendidos por la Comisión de lo Jurídico del Senado de Puerto Rico y, más importante aún, **el lenguaje objetado por el Departamento de Justicia por su posible efecto sobre la imposición de sentencias consecutivas no sufrió alteración alguna durante la totalidad del trámite legislativo.**[5]

En segundo lugar, surge diáfanamente del lenguaje de la Ley Núm. 85-2022, supra, que la persona convicta que cumple sentencias por varios delitos de manera consecutiva "tendrá derecho a cualificar para libertad bajo palabra al cumplir con el término concerniente a la pena mayor recibida por alguno de los delitos cometidos." 33 LPRA sec. 5416. Una lectura integral de la Ley Núm. 85-2022, supra, obliga a concluir que ello es independiente de la etapa de liquidación de condena en la cual se encuentra la persona convicta.

Lo que es más, la Carta Circular Núm. 2023-02 de 15 de junio de 2023, cuyo propósito es establecer un procedimiento para dar cumplimiento al referido estatuto, originalmente

---

[5]Véase, https://sutra.oslpr.org/osl/esutra/medidareg.aspx?rid=1389 53 (Última visita 4 de diciembre de 2023).

instruía que "[t]odo delito cumplido en su totalidad (máximo y mínimo) será eliminado de la Hoja de Liquidación de Sentencia". Ello fue precisamente lo que hizo Corrección en la Hoja de control sobre liquidación de sentencias del señor Ruiz Matos con fecha de 4 de mayo de 2023.[6] No obstante, la Carta Circular Núm. 2023-02 fue enmendada el 11 de octubre de 2023 para eliminar tal instrucción y establecer una orden en contrario: "[l]os delitos cumplidos en su totalidad permanecerán en la nueva "Hoja de Control sobre Liquidación de Sentencias". Es decir, que parte de la práctica que impugna el señor Ruiz Matos es precisamente un error que Corrección reconoció posteriormente en su política institucional. Sin embargo, pretende sostener ante los foros judiciales actos administrativos irrazonables como este.

Además, salta a la vista de estas Cartas Circulares la frecuencia con la que sus instrucciones disponen expresamente que la sentencia más larga es necesariamente la de primer orden al momento de evaluar el mínimo para propósitos de la Ley Núm. 85-2022, supra. Ello es de particular interés al recordar que el Tribunal de Apelaciones razonó en su Sentencia que Corrección había establecido en otras comunicaciones internas un orden específico para la liquidación de sentencias consecutivas, el cual debía de ser de conocimiento de la Asamblea

---

[6]Recurso del señor Ruiz Matos, Anejo B, pág. 4.

Legislativa, y que daba prioridad al cumplimiento de sentencias impuestas al amparo de la antigua Ley de Armas, supra. Tal razonamiento es enteramente infundado, según revela una lectura del Manual de procedimientos de la División de Documentos y Récord Penales de Corrección, infra, que cita el propio foro apelativo intermedio. Si bien tal Manual no está actualizado al Código Penal vigente, se desprende claramente que, en una situación en la que se hubieran impuesto sentencias consecutivas bajo el Código Penal de 1974 o 2004 y la ahora derogada Ley de Armas, supra, en primer orden contaría aquella bajo el Código Penal.[7]

---

[7]Según el Manual de procedimientos de la División de Documentos y Récord Penales de Corrección, aprobado desde el 2 de septiembre de 1976 y actualizado el 12 de julio de 2007, una persona a la que le impusieron sentencias consecutivas "cumplirá las sentencias en el mismo orden cronológico en que fueron dictadas". Manual, pág. 130. En el caso del señor Ruiz Matos, las sentencias consecutivas fueron dictadas el mismo día. Asimismo, en lo referente a cómo la liquidación se ve afectada por Leyes Especiales, el Manual establece que "[s]i la sentencia por ley de armas está acompañada de otra sentencia consecutiva los términos deben separarse y para estos fines se utilizará la Hoja de Control Sobre Liquidación de Sentencia de cuatro columnas. Si las sentencias son dictadas en la misma fecha la sentencia por ley de armas se computará por último (véase opinión legal del 21 de febrero de 2006). De haber sido dictadas en diferentes fechas se respetará el orden en que fueron dictadas". Manual, pág. 145.

Es necesario señalar que este Manual solo contempla los Códigos Penales del 1974 y 2004, ninguno de los cuales era el aplicable al momento en el que ocurrieron los hechos que dieron pie a las condenas del señor Ruiz Matos. Sin embargo, este hace distinción en el cómputo del máximo y el mínimo que va primero cuando las sentencias consecutivas son de uno de estos códigos y de la Ley de Armas, supra, yaciendo su diferencia en si esta última bonifica o no.

En este momento, es imprescindible citar la descripción que ofreció una de las autoras del Proyecto del Senado 437 que eventualmente se convirtió en la Ley Núm. 85-2022, supra, la Senadora Rodríguez Veve, precisamente sobre lo concerniente a su aplicación a personas confinadas con penas consecutivas:

> Además, este proyecto una de las mejores aportaciones que tiene es que también permite que las personas, para ser consideradas a la Junta de Libertad Bajo Palabra, **se considere <u>solamente</u> el delito por la pena mayor, y que sea ese delito y con esa pena mayor el considerado para hacer el cómputo para poder ser considerado por la Junta, de manera que no se haga de forma consecutiva, como se hace ahora**, ¿por qué? ¿Por qué esto es importante? Porque si esto no se cambia, quiere decir que van a haber personas que jamás, jamás van a poder ser consideradas, porque el cúmulo de penas va a superar los años –¿verdad?– que le permitirían estar vivo tan siquiera para ser considerados. O sea, que esto es sumamente importante que sea modificado en nuestra ley. (Negrillas y énfasis suplidos). P. del S. 437 de 25 de mayo de 2021, 2da Sesión Ordinaria, 19na Asamblea Legislativa, pág. 8153.

**Es decir, es evidente que la intención legislativa detrás de este estatuto fue que solo se tomara en consideración la extensión de la pena mayor impuesta,**

---

Bajo el Código Penal de 1974, para computar el máximo, si las sentencias consecutivas fueron dictadas en la misma fecha que las de la Ley de Armas, supra, "se computa primero el delito que no pertenece a la ley de armas y por último la ley de armas", mientras que el mínimo es la mitad de la pena impuesta. En cuanto a sentencias consecutivas dictadas en la misma fecha bajo el Código Penal de 2004 y la Ley de Armas, supra, el máximo requiere que se compute primero el delito que no pertenece a la Ley de Armas, supra, y en lo que respecta al mínimo, lo penal es por grado del delito y el de armas a la mitad de la sentencia. Manual, págs. 154-158.

**independientemente de las otras penas consecutivas y sin hacer distinción entre estas.** De lo contrario, se nulificarían el efecto y el propósito de la enmienda hasta redundar en la práctica cuya erradicación motivó la creación de la Ley Núm. 85-2022, supra.

Ciertamente, tanto la interpretación equivocada y reiterada de Corrección como la forma inconsistente en la que el foro apelativo intermedio ha estado aplicando esta ley demuestran sin lugar a duda cuán imperativo era que este Tribunal interviniera en el asunto y disipara toda confusión sobre el efecto de la Ley Núm. 85-2022, supra, en el cómputo del mínimo de la sentencia más larga cuando hay penas consecutivas.

En el caso particular del señor Ruiz Matos, a la luz del texto claro de la Ley Núm. 85-2022, supra, y su historial legislativo, este Tribunal debió resolver que al emitir tanto la Hoja de control sobre liquidación de sentencias del 31 de octubre de 2022 como aquella con fecha de 4 de mayo de 2023, **Corrección interpretó y aplicó erróneamente el Derecho aplicable en la medida en que: (1) no ubicó en primer orden la sentencia con la pena más larga; (2) eliminó del documento las penas ya extinguidas, y (3) usó como punto de partida para el mínimo de la sentencia más longeva el momento en que se extinguió el mínimo de las sentencias más cortas.**

Teniendo esta ley efecto retroactivo siempre que su aplicación sea favorable para el confinado o confinada, independientemente del Código Penal o de la Ley Penal Especial vigente al momento de los hechos delictivos, y no surgiendo de su texto que su aplicación estuviera sujeta a la etapa de liquidación en la cual se encontrara la persona convicta o al orden en que esta comenzó a cumplir las sentencias consecutivas, es evidente que Corrección erró en su adjudicación del petitorio del señor Ruiz Matos.

**Al actuar de esta forma, no cabe hablar de deferencia a la interpretación administrativa o, según sugirió Corrección con la aceptación del Tribunal de Apelaciones, validar su acción meramente porque, <u>aunque incorrecta</u>, no fue enteramente irrazonable.** En efecto, Corrección se excedió de sus facultades al añadir requisitos y consideraciones adicionales que no encuentran raíz en el texto legislativo y, de esta forma, soslayar el espíritu de la Ley Núm. 85-2022, <u>supra</u>: permitir que las personas que han sido convictas consecutivamente por varios delitos puedan ser consideradas para los beneficios de la libertad bajo palabra luego de cumplir con el setenta y cinco por ciento (75%) del término de reclusión impuesto en la sentencia con pena más onerosa.

En fin, correspondía devolver el asunto a Corrección para que emitiera una nueva <u>Hoja de control sobre liquidación de sentencias</u> que, no solo incluyera las

sentencias ya extinguidas, sino que también ajustara la fecha del mínimo de cumplimiento de la sentencia más larga, de modo que aplicara correctamente el beneficio que provee la Ley Núm. 85-2022, supra, a confinados como el señor Ruiz Matos. Esta era la única vía cónsona con el espíritu de este estatuto. Debido a que no se rectificó este curso de acción tan errado, no tengo más remedio que disentir.

## IV

Por los fundamentos antes expresados, **disiento** y hubiese devuelto el asunto ante la consideración de Corrección para que ajustara la fecha del mínimo cumplimiento del señor Ruiz Matos con su sentencia más longeva de acuerdo con los lineamientos aquí consignados, tomando como punto de partida el inicio de su reclusión e incluyendo el tiempo de las sentencias ya extinguidas.


Luis F. Estrella Martínez
Juez Asociado